**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Nerdig, et al., | No. CV-17-01859-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Electric Insurance Company, | |
| Defendant. | |

Pending before the Court is the Motion for Partial Summary Judgment[1] of Defendant Electric Insurance Company (Doc. 27). For the following reasons, the Court grants the motion.

## BACKGROUND

In November 2014, Plaintiff Gary Nerdig was stopped in his company's vehicle on the I-17 and was hit from behind by a vehicle operated by a non-party, Lidia Elisa Martinez. Mr. Nerdig was injured and required multiple surgeries. Ms. Martinez's insurance company paid its policy limit to Mr. Nerdig, for a total of $15,000. The company vehicle Mr. Nerdig was driving was insured by Travelers Insurance Company. It included underinsured motorist coverage ("UIM") up to a $1,000,000 limit. This policy was the primary UIM coverage. Defendant, Electric Insurance, provides Plaintiffs'

---

[1] Electric has not moved for summary judgment on Count II, a request for the trier of fact to determine the amount of damages that Mr. Nerdig is legally entitled to recover. Therefore, the Court construes this as a Motion for Partial Summary Judgment and does not address Count II.

personal automobile insurance. Electric's policy has a UIM coverage limit of $250,000, and is in excess to the Travelers insurance.

Electric was informed by Plaintiffs' counsel about its possible exposure in January 2016. Electric did not begin an investigation at that time, but Electric did monitor the investigation undertaken by Travelers. Plaintiffs' counsel sent other letters to Electric in February 2016 asking for Electric to identify documents that would be needed to review the claim. Electric did not respond to the letters. On March 20, 2017, Plaintiffs sent a demand letter to both Travelers and Electric, requesting a payment of the full policy limit. Travelers issued a payment of $1,000,000 to Mr. Nerdig on March 24, 2017. Electric began evaluating Mr. Nerdig's claim on March 28, 2017, after being informed that the UIM coverage from Travelers was exhausted.

Electric assigned the claim to defense counsel on April 12, 2017. Defense counsel requested Mr. Nerdig to undergo an Examination Under Oath ("EUO"), an Independent Medical Examination ("IME"), and to authorize Electric to obtain additional medical records. Electric's contract with Mr. Nerdig provides that an insured may be required to submit to the above requests. On April 28, 2017, Electric offered Mr. Nerdig $50,000. Plaintiffs, Mr. Nerdig and his wife, filed suit on May 15, 2017, alleging breach of contract and bad faith. Electric has now moved for summary judgment on such claims, Counts I and III of the Complaint.

**DISCUSSION**

**I.  Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**II. Analysis**

**A. Breach of the Implied Covenant of Good Faith and Fair Dealing**

In Arizona, "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." *Noble v. Nat'l American Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). Where an insurer "intentionally and unreasonably denies or delays" payment of a claim, the insurer has breached the duty of good faith. *Rawlings v. Apodaca*, 726 P.2d 565, 572 (Ariz. 1986). A plaintiff must show (1) "the absence of a reasonable basis for denying benefits of the policy" and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Noble*, 624 P.2d at 868. Thus, the "initial inquiry consists of an objective finding, i.e., whether the insurer acted unreasonably, [and] the second inquiry focuses on the insurer's conduct and whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it." *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz. 1992). A plaintiff "may simultaneously bring an action for both breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim." *Id.* at 1270. Plaintiff argues that Electric breached its duty of good faith by failing to immediately conduct an investigation when it was informed of its potential exposure in January 2016 and that Electric's requirements that Mr. Nerdig submit to EUOs, an IME, and medical authorizations constituted unnecessary procedural hoops.

Both parties agree that the "Electric underinsured motorist coverage was excess to the underinsured motorist coverage afforded by Travelers." (Doc. 28, ¶ 7; Doc 30, ¶ 7). Under Arizona law, "[u]ntil a primary insurer offers its policy limit, the excess insurer does not have a duty to evaluate a settlement offer, to participate in the defense, or to act at all." *Twin City Fire Ins. Co. v. Burke*, 63 P.3d 282, 287 (Ariz. 2003); *see also Geurden v. Quantum Transportation LP*, 298 F.Supp.3d 1222, 1228 (D. Ariz. 2018) ("An excess insurer has no duty to defend its insured unless the primary insurer exhausted its policy limit to defend the insured."). Plaintiffs assert that these cases are not relevant because they do not deal with UIM coverage. While true, Plaintiffs do not explain why an insurer with UIM coverage that specifies that it is in excess to other policies should be in a different position than an insurer with other excess coverage. Electric was informed that Travelers had tendered their UIM limit to Mr. Nerdig on March 28, 2017. (Doc. 28, Ex. B, p. 2). Electric began its evaluation of Mr. Nerdig's claim on the same day. (Doc. 28, ¶ 13; Doc. 30, ¶ 13). Plaintiffs cannot meet their burden of proof and cannot show that Electric unreasonably delayed its evaluation of the claim.

Plaintiffs also assert that Electric acted in bad faith by requiring Mr. Nerdig to submit to EUOs, an IME, and to sign medical authorizations. Mr. Nerdig's contract with Electric provided that the insured must "[s]ubmit as often as we reasonably require [t]o physical exams by physicians we select [and] [t]o examination under oath." (Doc. 30, Ex. D). It also required the insured to "[a]uthorize [the insurer] to obtain medical reports." *Id*. Electric requested Mr. Nerdig's availability for an EUO, an IME, and medical record authorizations on April 26, 2017. Courts have held that insurers may not use EUOs and IMEs to delay the process and breach the duty of good faith and fair dealing. But Plaintiffs here have provided no such evidence of an intent on Electric's part to use the contractual terms in bad faith. Plaintiffs have noted that the primary UIM insurer, Travelers, did not request any additional information. But that is hardly relevant as to whether Electric acted in bad faith by seeking additional information, especially when: (1) the Defendant did receive additional relevant documents pursuant to the signed

authorizations that were relevant to the merits of the Plaintiff's claims; and (2) the evaluation of plaintiff's damages may change over time; and (3) the evaluation of the sufficiency of plaintiff's damage payments may be in a different posture after he had received the additional excess payment from Travelers than it was before that payment. Although it might not have changed the damages themselves, it might have informed an assessment of the Plaintiff's ability to meet his ongoing needs in light of the additional payment. Plaintiffs also note that two IME reports already existed, but Electric's desire to have a more up-to-date IME report does not demonstrate bad faith. In *Demetrulias v. Wal-Mart Stores Inc.*, the court found that a fact issue for the jury existed where the insurance adjuster's notes said that the purpose of the IME was "to limit the extent of the injury." 917 F.Supp.2d 993, 1007 (D. Ariz. 2013). Similarly, in *Mendoza v. McDonald's Corp.*, the court held that although an insurer was "entitled to seek an independent medical examination regarding [the insured's] need for treatment," the claim file reflected that the IME was sought "for the purpose of 'cutting' or closing [the insured's] claim." 213 P.3d 288, 308 (Ariz. Ct. App. 2009). Unlike *Demetrulias* and *Mendoza*, Plaintiff offers no admissible evidence that the purpose of the IME was "to limit the extent of the injury."

As *Montoya Lopez v. Allstate Ins. Co.* makes clear, the burden is on the Plaintiff to demonstrate some relevant fact that would demonstrate pretext beyond its mere supposition. 282 F.Supp.2d 1095, 1101 (D. Ariz. 2003) ("[W]hile [the insured's] claim that the request for an interview was a pretext, if true, might prove bad bath, [the insured] does not present any evidence that the request was pretextual. . . . [T]he claim that it was just another 'hoop' for [the insured] to jump through is merely a feeling that [the insured] had; it is not supported by any evidence such as the absence of a requirement or practice that the adjuster speak with the insured."). Plaintiffs have cited no evidence, whether from depositions or documents or experts, which indicate any of the steps Electric took were done to delay or deny coverage. As for the EUO and the additional medical authorizations, Plaintiffs claim that Electric gained virtually no new information from

these inquiries. But, the relevant question is not whether the additional inquiries resulted in pertinent information; rather, the question is whether Electric requested the additional information in good faith.

The Court grants Electric's Motion for Summary Judgment on the claims of breach of good faith relating to the timing of Electric's investigation and Electric's requests for additional information. Electric did not move for summary judgment on Plaintiffs' claims that Electric made a lowball offer in bad faith. Therefore, those claims are not dismissed.

### B. Breach of Contract

Under Arizona law, a claim for breach of contract has three elements: (1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff. *See Frank Lloyd Wright Foundation v. Kroeter*, 697 F.Supp.2d 1118, 1125 (D. Ariz. 2010). Mr. Nerdig has not established that Electric breached its contract. In general, a breach of an insurance contract "occurs when the insurer denies the insured the relevant coverage." *Clark Equipment Co. v. Arizona Property and Cas. Ins. Guar. Fund*, 943 P.2d 793, 800 (Ariz. Ct. App. 1997) (citing *Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 628 (Ariz. 1988) and *Bluetreich v. Liberty Mut. Ins. Co.*, 826 P.2d 1167. 117–71 (Ariz. Ct. App. 1991)); *see also Mora v. Phoenix Indem. Ins. Co.*, 996 P.2d 116, 121 n.5 (Ariz. Ct. App. 1999) ("[T]he mere fact that an insurer does not accept an offer to settle within the deadline set by the settlement demand does not automatically constitute a breach of the contract."). This is because "the nature and extent of the breach, and the damages flowing from it, can be determined only after a claim has been *definitively* denied and negotiations between insurer and insured have ceased." *Clark*, 943 P.2d at 800. Electric argues that it simply disagreed with Mr. Nerdig's valuation of his claim, requested additional authorizations to investigate the claim, and offered a $50,000 payment. Electric states that Mr. Nerdig sued for breach of contract prior to the investigation being completed. (Doc. 27, p. 16). Mr. Nerdig's Response does not refute the fact that the lawsuit was

brought prior to the completion of the investigation and negotiations. Essentially, Mr. Nerdig's claim for breach of contract is not ripe because Mr. Nerdig sued before any alleged breach was actualized. Moreover, Mr. Nerdig's Response does not contain any discussion of facts which would support a finding that the claim exceeded $50,000. Mr. Nerdig bears the burden of proof at trial, and cannot prove the case simply by asserting that he is entitled to the full policy limit.

## CONCLUSION

As an excess insurer, Electric had no duty to investigate the claim until the primary insurance was exhausted. Electric did not breach its duty of good faith by waiting until the primary insurance was exhausted to begin an investigation. Similarly, Electric did not breach its duty of good faith by requesting Mr. Nerdig to provide further medical information. Although such steps could constitute bad faith if done with the intent to delay or deny payment, Mr. Nerdig has presented no evidence from which a jury could conclude that Electric acted in bad faith. The Court grants summary judgment to Electric on those aspects of the breach of the implied covenant of good faith claim. Mr. Nerdig cannot demonstrate that Electric breached their contract. Mr. Nerdig filed suit before negotiations and investigations had been completed, and Electric had not definitively denied coverage. Mr. Nerdig has not presented evidence that would allow a jury to conclude he was entitled to more than what Electric offered; his belief is not enough. The Court grants summary judgment to Electric on the breach of contract claim.

**IT IS THEREFORE ORDERED** that Defendant Electric Insurance Company's Motion for (Partial) Summary Judgment (Doc. 27) is **GRANTED**.

Dated this 31st day of August, 2018.

_____
Honorable G. Murray Snow
United States District Judge