**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Nerdig, et al., | No. CV-17-01859-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Electric Insurance Company, | |
| Defendant. | |

Pending before the Court is Plaintiffs Motion to Compel and Motion for Sanctions (Doc. 99). For the following reasons, the Court will grant the Motion to Compel and defer a ruling on the Motion for Sanctions.[1]

## BACKGROUND

In early 2016, Defendant Electric Insurance Company ("Electric") was initially made aware of Plaintiffs' potential underinsured motorist ("UIM") claim. Plaintiffs' counsel sent other letters to Electric in February 2016 asking for Electric to identify documents that would be needed to review the claim. Electric did not respond to the letters.

/ / /

/ / /

---

[1] Defendant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

On March 20, 2017, Plaintiffs sent a demand letter to both Travelers Insurance and Electric, requesting a payment of the full policy limit. Travelers issued a payment of $1,000,000 to Mr. Nerdig on March 24, 2017. Electric began evaluating Mr. Nerdig's claim on March 28, 2017, after being informed that the UIM coverage from Travelers was exhausted. Electric then brought on defense counsel on April 12, 2017 to assist in adjusting the claim. Defense counsel requested Mr. Nerdig to undergo an Examination Under Oath, an Independent Medical Examination, and to authorize Electric to obtain additional medical records. Electric's contract with Mr. Nerdig provides that an insured may be required to submit to the above requests. On April 28, 2017, Electric offered Mr. Nerdig $50,000. On May 7, the claim was reassigned to Electric claims adjuster Tim McNamara. Plaintiffs, Mr. Nerdig and his wife, filed suit on May 15, 2017.

Following this Court's Order on Defendant's Motion for Summary Judgment, Plaintiffs' only remaining claims are for bad faith and punitive damages. (Doc. 97).

**DISCUSSION**

**I. Legal Standard**

The attorney work product doctrine protects documents that are "prepared in anticipation of litigation or for trial." F.R.C.P. 26(b)(3); *see Hickman v. Taylor*, 329 U.S. 495 (1947). The work product doctrine applies not only to work performed by lawyers, but also to work performed by a party's "representative" or "agent," and therefore presumably extends to work performed by Defendant's claims adjusters Alan Hunter and Tim McNamara, so long as that work was prepared in anticipation of litigation. *See* F.R.C.P. 26(b)(3). "The primary purpose of the work product rule is to prevent the exploitation of a party's efforts in preparing for litigation." *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (internal citations and quotation marks omitted). A document is prepared in anticipation of litigation if "it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004).

Opinion work product may still be discoverable if mental impressions are at issue in a case and the need for the material is compelling. *Id*. at 577. "In a bad faith insurance claim settlement case, the strategy, mental impressions, and opinion of the insurer's agents concerning the handling are directly at issue." *Id*. "Unless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim." *Id*.

In Arizona, the attorney-client privilege is defined by statute. *See* A.R.S. § 12-2234. For a communication to be protected by the attorney-client privilege, "the communication must be made to or by the lawyer for the purpose of securing or giving legal advice." *Samaritan Foundation v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1994) (en banc). "Thus, not all communications to one's lawyer are privileged." *Id*. And, merely assigning an attorney to perform an ordinary insurance business function does not "cloak with privilege matters that would otherwise be discoverable." *Merrin Jewelry Co. v. St. Paul Fire Marine Ins. Co.*, 49 F.R.D. 54, 57 (S.D.N.Y. 1970).

## II. Analysis

Plaintiffs seek to compel production of several documents, including a Large Loss Report from May 2016, Flash Reports, documents that contain handwritten notes from Mr. Hunter, emails between defense counsel and Mr. Hunter, handwritten notes from Mr. McNamara from after the start of litigation, a medical report prepared by a nurse consultant, Nancy Liebe, email communications between defense counsel and Electric after the lawsuit was filed, and claim notes after defense counsel was brought in to help adjust the claim. Electric argues that all of these materials are work product, and that the emails sent and received by defense counsel and the claim notes after April 12 are additionally protected by attorney client privilege.

### 1. Materials Protected by the Attorney-Client Privilege

Plaintiffs request all communications between defense counsel and Electric, both before and after this lawsuit was filed, as defense counsel assisted in the claims

adjustment process. Since some of the communications between defense counsel and Electric will likely fall within the attorney-client privilege scope, the Court will conduct an *in camera* review of those documents to determine whether any communications "were made to or by the lawyer for the purpose of securing or giving legal advice." *Samaritn Foundation*, 176 Ariz. at 497.

Electric further argues that the claim notes prepared by defense counsel are covered by the attorney-client privilege. But Electric also admits that "no legal advice is dispensed in performing these functions" when they were assisting in the claim adjustment process (Doc. 102 at 9). The attorney-client privilege protects a subset of communications between a lawyer and client—not all tasks performed by a lawyer, legal and non-legal. Because Defendant admits that the claim notes do not contain legal advice, the material is not protected by the attorney-client privilege.[2]

## 2. Materials Prepared in Anticipation of Litigation

To be covered by the work product doctrine, materials must be produced "in anticipation of litigation," which means that the document "would not have been created in substantially similar form but for the prospect of that litigation." *In Re Grand Jury Subpoena*, 357 F.3d at 908. Many of the documents plaintiffs are seeking would have been prepared in a regular claims adjustment process. But Plaintiffs were aggressive in pursuing their claim, first by sending a demand letter, and then by imposing strict deadlines on the claims adjustment process, and refusing to give more time to the adjuster to conduct a review. While many of these same documents may have been created in a typical claims adjustment process, the possibility of litigation may have had an impact on the documents generated in this case.

---

[2] Defendant's main argument is that the attorney-client privilege has not been waived in this matter because the Defendant is not using advice of counsel as a defense. *See State Farm Mut. Auto Ins. Co. v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000). But there is no privilege for Electric to waive when the documents are not protected.

Assuming these documents are work product, they may still be discoverable if mental impressions are at issue in this case, and the need for the material is compelling. The remaining claim in this case alleges that Defendant acted in bad faith by offering a lowball amount to settle Plaintiffs' claim. The Court will review the documents *in camera* to determine if they have information "regarding the insurer's opinion of the viability and value of the claim." *In Re Grand Jury Subpoena*, 357 F.3d at 577.

   **3.    Sanctions**

Plaintiffs request sanctions because the Defendant did not produce all of the materials in compliance with the MIDP Order (Doc. 3), or note them in the privilege log. The Court will determine whether sanctions will issue after it conducts an *in camera* review.

**IT IS HEREBY ORDERED** that the Plaintiff's Motion to Compel (Doc. 99) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendant shall produce email correspondence with defense counsel, the May 7 Large Loss Report, Ms. Liebe's medical report, Mr. McNamara's claim notes, the Flash Reports, all documents with handwritten notes from Mr. Hunter, and claim notes from defense counsel for the Court's *in camera* review on or before **noon on November 9, 2018**.

Dated this 1st day of November, 2018.

_____
G. Murray Snow
Chief United States District Judge